UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| Debra Boettsche Bower, as Trustee of the Robert H. Bower Trust Agreement dated May 4, 1987, et al, individually and as class representatives, : : : : : | Case No. 1:09-cv-351 |
| Plaintiffs, : : | |
| vs. : : | |
| MetLife, Inc. and Metropolitan Life Insurance Company, : : : | |
| Defendants. | |

**ORDER**

WHEREAS, the Plaintiffs Debra L. Goettsche Bower and Linda F. Cassady (collectively, "Plaintiffs") and Defendants MetLife, Inc. and Metropolitan Life Insurance Company, Inc. (collectively, the "Defendants") have entered into a Settlement Agreement intended to resolve the litigation pending in this Court; and

WHEREAS, the Settlement Agreement, together with supporting materials, sets forth the terms and conditions for a proposed settlement and dismissal with prejudice of this action; and

WHEREAS, the Court previously reviewed and granted Plaintiffs' Motion for Preliminary Approval of Settlement and was satisfied that the terms and conditions set forth in the Settlement Agreement were the result of good faith, arm's length settlement negotiations between competent and experienced counsel for both Plaintiffs and Defendants and that the terms of the Settlement, including the issuance of notice to the Class, were fair, reasonable, adequate, and in the best interests of the Class; and

WHEREAS, the Court conducted a fairness hearing on October 17, 2012, at 9:00 a.m. during which Class Counsel presented additional information about the implementation of the settlement and addressed all of the objections to the settlement previously filed with the Court;

IT IS HEREBY ORDERED, ADJUDGED AND DECREED this 17th day of October, 2012, as follows:

1. The Court has jurisdiction over the subject matter of this Action and may grant final approval of the Settlement Agreement, including all Exhibits to the Settlement Agreement. 28 U.S.C. § 1332. The Court also has personal jurisdiction over each of the Plaintiffs-Class Representatives, Defendants, and Class Members.

2. This Order Granting Final Approval of Class Action Settlement ("Order") incorporates by reference the definitions in the Settlement Agreement filed in this action at docket entry ("Doc.") 104-2, and all capitalized terms used herein that also appear in the Settlement Agreement shall have the meanings set forth in the Settlement Agreement.

3. The Court grants final approval to the Settlement, as set forth in the Settlement Agreement, as it is fair, reasonable, and adequate, consistent and in compliance with all applicable requirements of the Federal Rules of Civil Procedure, the Class Action Fairness Act, the United States Constitution (including the Due Process Clause), and the Rules of the Court, and is in the best interests of each of the Parties and the Class Members.

4. The Class approved by this Court, and for which final approval is given, is as follows:

> [A]ny or all Persons who (a) filed a claim with Defendants for payment of life insurance benefits pursuant to the terms of the FEGLI Policy on or after May 18, 2003 but on or before May 31, 2012, and (b) where the insured decedent had coverage under the

>FEGLI Policy and died on or before January 31, 2012, and (c) were paid delayed settlement interest at an interest rate of 1.5%. For purposes of defining the Class, a claim for life insurance benefits pursuant to the FEGLI Policy shall be deemed to be "filed" on or before May 31, 2012 if on or before that date (a) a Defendant receives notice of the insured's death from any of the Federal Agencies or any potential Class Member or (b) a Defendant receives a claim for FEGLI Policy benefits from or on behalf of a potential Class Member. Excluded from the Class are Defendants, any entity in which Defendants have a controlling interest, any entity that has a controlling interest in either Defendant, and Defendants' employees, legal representatives, assigns, and successors.

The Class satisfies all of the requirements of Federal Rule of Civil Procedure 23(a) (including the requirements of numerosity, commonality, typicality and adequacy) and the requirements of Rule 23(b)(3).

5. Defendants complied with the notice requirements in the Class Action Fairness Act, (28 U.S.C. § 1715), by causing the Settlement Administrator to timely issue notice of the Settlement and other required documents to the Attorney General of the United States and to the Insurance Commissioners of 50 states, the District of Columbia, the Commonwealth of Puerto Rico, the U.S. Virgin Islands, and the U.S. territory of Guam. The Court's docket shows that neither the Attorney General nor any Insurance Commissioner objected to the Settlement Agreement or otherwise attempted to intervene or participate in the Action or the fairness hearing.

6. As evidenced by the Affidavit of Jeffrey D. Dahl (hereinafter "Dahl Affidavit"), a principal of the Settlement Administrator, the Notice and other elements of the Notice Program were directed to the Class in accordance with the Court's July 3, 2012 preliminary approval order [Doc. 105] and the Settlement Agreement, and (1) constituted the best practicable notice

under the circumstances; (2) constituted notice that was reasonably calculated, under the circumstances, to apprise potential Class Members of the pendency of the Action, the terms of the proposed Settlement Agreement, the available relief, the release of claims, their right to object or exclude themselves from the proposed Settlement, and their right to appear at the Fairness Hearing; (3) were reasonable and constitute due, adequate, and sufficient notice to all persons entitled to receive notice; and (4) met all applicable requirements of the United States Constitution (including the Due Process Clause), the Class Action Fairness Act, the Federal Rules of Civil Procedure, and the Rules of the Court.

  7. There were members of the Class certified by the Court in 2011 that elected to exclude themselves from the case before the Settlement Agreement was announced ("Initial Opt Outs"). The Court, pursuant to the Settlement Agreement, directed the Parties to notify the Initial Opt Outs of their opportunity to participate in the Settlement Agreement. As evidenced by the Dahl Affidavit, separate notices were directed to the Initial Opt Outs in accordance with the Court's July 3, 2012 preliminary approval order and the Settlement Agreement, and these notices (1) constituted the best practicable notice for the Initial Opt Outs under the circumstances; (2) constituted notice that was reasonably calculated, under the circumstances, to apprise the Initial Opt Outs of the pendency of the Action, the terms of the proposed Settlement Agreement, the available relief, the release of claims, their right to include themselves in the proposed Settlement, and their right to appear at the Fairness Hearing; (3) were reasonable and constitute due, adequate, and sufficient notice to all Initial Opt Outs entitled to receive notice; and (4) met all applicable requirements of the United States Constitution (including the Due Process Clause),

the Class Action Fairness Act, the Federal Rules of Civil Procedure and the Rules of the Court.

8.  The Class Members, also referred to in this Order as "Settling Class Members," include (a) the members of the Class who did not validly and timely exclude themselves from the Settlement, and (b) the Initial Opt Outs who validly and timely elected to opt in to the Settlement.

9.  This Order uses the term "Excluded Class Members" to refer to both (a) the Initial Opt Outs who did not validly and timely elect to opt in to the Settlement and (b) the members of the Class who validly and timely excluded themselves from the Settlement.

10.  Each and every Settling Class Member is and shall be conclusively and forever bound by the Settlement Agreement. The Settlement Agreement shall be preclusive in all pending and future lawsuits or other proceedings, and it shall be binding as to all the Released Claims.

11.  The Court directs the Parties and their counsel to further implement and consummate this Settlement Agreement, the terms and provisions of which are incorporated by reference into this Order. No later than ten days after the Effective Date, i.e., when Finality is achieved, MetLife shall pay the Net Settlement Payment by wire transfer to the Depository Bank. Thereafter, Class Representatives and Class Counsel shall make those payments authorized by the Court and the Settlement Agreement. MetLife's payment of the Net Settlement Payment shall constitute full and final satisfaction of any and all claims of the Settling Class Members to the Settlement Fund; and the Releasees shall have no further responsibility for, and no liability whatsoever with respect to, the calculation of the amount to which each Settling Class Member may be entitled, the allocation of the Settlement Fund(s), and/or the disbursement or delivery of

Settlement Funds to any Settling Class Member, or to any other person or entity who may assert any claim to Settlement Funds.

12.  The Release, Covenant Not to Sue and Bar Order are incorporated into this Order and shall become effective when Finality is achieved.  Accordingly:

a.  each and every Settling Class Member/Releasing Party hereby compromises, settles and releases each and every Released Claim against the Releasees, as set forth in the Release;

b.  each and every Settling Class Member/Releasing Party is and shall be permanently enjoined from : (i) filing, commencing, prosecuting, intervening in, participating in or receiving any benefits from any lawsuit, arbitration, administrative or regulatory proceeding or order in any jurisdiction based on any or all Released Claims against one or more Releasees; (ii) instituting, organizing class members in, joining with class members in, amending a pleading in or soliciting the participation of class members in, any action or arbitration, including but not limited to a purported class action, in any jurisdiction against one or more Releasees based on, involving, or incorporating, directly or indirectly, any or all Released Claims; and (iii) filing, commencing, prosecuting, intervening in, participating in or receiving any benefits from any lawsu it, arbitration, administrative or regulatory proceeding or order in any jurisdiction based on an allegation that an action of the Releasees, which is in compliance with the provisions of the Agreement, violates any right of any Class Member.

c.  each and every Settling Class Member/Releasing Party covenants and agrees

not to sue or cooperate in the filing or prosecution of any suit or proceeding in any forum based upon or related to any of the Released Claims against any Releasee; and

d. All Persons who are, have been, could be, or could have been alleged to be joint tortfeasors, co-tortfeasors, co-conspirators, or co-obligors with any or all of the Releasees respecting any or all of the Released Claims, are hereby, to the maximum extent permitted by law, barred and permanently enjoined from making, instituting, commencing, prosecuting, participating in or continuing any claim, claim-over, cross-claim, action, or proceeding, however denominated, regardless of the allegations, facts, law, theories or principles on which they are based, in this Court or in any other court or tribunal, against any or all of the Releasees, with respect to any or all of the Released Claims, including without limitation equitable, partial, comparative, or complete contribution, set-off, indemnity, or otherwise, whether by contract, common law or statute, arising out of or relating in any way to the Released Claims. All such claims are hereby fully and finally barred, released, extinguished, discharged, satisfied and made unenforceable to the maximum extent permitted by law, and no such claim may be commenced, maintained, or prosecuted against any Releasee. Any judgment or award obtained by a Class Member against any such Person shall be reduced by the amount or percentage, if any, necessary under applicable law to relieve any Releasee of all liability to such Person on such barred claims. Such judgment reduction, partial or complete release, settlement credit, relief, or setoff, if any,

shall be in an amount or percentage sufficient under applicable law as determined by the Court to compensate such Person for the loss of any such barred claims against any Releasee. Where the claims of a Person who is, has been, could be, or could have been alleged to be a joint tortfeasor, co-tortfeasor, co-conspirator or co-obligor with a Releasee respecting the Released Claims have been barred and permanently enjoined by this section, the claims of Releasees against that Person respecting those Released Claims are similarly fully and finally barred, released, extinguished, discharged, satisfied and made unenforceable to the maximum extent permitted by law.

13. Class Counsel and the Class Representatives adequately represented the best interests of the Class for purposes of negotiating, entering into, and implementing the Settlement.

14. This Action and every Released Claim (including all individual claims and Class-wide claims presented thereby) is hereby dismissed on the merits and with prejudice, without fees or costs to any Party except as provided in the Settlement Agreement and as adopted and ordered by the Court in this Order.

15. Without affecting the finality of this Order for purposes of appeal, the Court retains jurisdiction as to all matters relating to the administration, implementation, consummation, enforcement, and interpretation of this Settlement Agreement and this Order, and for any other necessary purpose.

16. There were three timely objections to the Settlement. For each of the reasons set forth below, the Court overrules all the objections and finds them to be without merit.

17. Objector Nicole Davis contends that any money remaining in the settlement fund as

a result of any un-cashed settlement payments should be redistributed on a pro-rata basis to each Settling Class Member rather than be paid to the cy pres beneficiary (the Federal Employees Education and Assistance Fund). The Court overrules her objection. The cost to re-issue a second settlement payment to approximately 900,000 Class Members will in all likelihood vastly exceed the value remaining in the Settlement Fund from any un-cashed/undeliverable settlement payments and is simply not practicable.

18. The Court overrules all objections raised by Rebecca Neaman. Ms. Neaman contends that because the Settlement does not contain any injunctive relief, Defendants are free to pursue the same conduct in the future that resulted in this litigation. Yet, the evidence presented to this Court makes clear that earlier this year, the United States Office of Personnel Management amended the FEGLI Policy to specifically identify the interest rate that would be payable on delayed settlement interest. That amendment removed the language at dispute in this case. In other words, the language at issue here, "the prevailing delayed settlement interest rate the Insurance Company pays on its other large group policies," is no longer the operative contractual language in the FEGLI Policy. The FEGLI Policy now identifies an express numerical delayed settlement interest rate. This amendment took effect for deaths on or after February 1, 2012, which is the reason the class period ends on January 31, 2012. Therefore, the "conduct alleged in the complaints" ended months ago, and there is no reason or basis for injunctive relief.

The Court also overrules Objector Neaman's objection that Class Counsel should have filed their fee petition prior to the objection deadline. Rule 23(h) gives the Court the discretion to determine the timing of fee petitions, Lonardo v. Travelers Indem. Co., 706 F. Supp. 2d 766,

810 (N.D. Ohio 2010), and contrary to Objector Neaman's statement, does not by its plain language require that the fee petition be submitted at any specific time. Further, the Court's order granting preliminary approval authorized the Notice Plan which clearly informed Class Members that Class Counsel would seek attorneys' fees of up to $2,300,000, expenses of up to $500,000, and a collective contribution award to the Class Representatives of up to $10,000. Thus, class members were informed of the maximum amount of fees, expenses, and contribution awards that would be sought by Class Counsel in the notice(s) months ago. Such notice comports with the requirements of Rule 23(h). See, e.g., In re Air Cargo Shipping Servs. Antitrust Litig., 2009 U.S. Dist. LEXIS 88404, 2009 WL 3077396, at *14 n.15 (E.D.N.Y. Sept. 25, 2009) (rejecting the same argument as "unpersuasive since the maximum fee amount that would be requested by counsel was the subject of worldwide direct and publication notice and the fee amount ultimately recommended .. . and sought by Settlement Class Counsel was filed with the court and posted on the Settlement Administrator's website notifying the class of information about this action").[1]

Objector Neaman's reliance upon the Ninth Circuit's decision in In re Mercury Secur. Litig., 618 F.3d 988 (9th Cir. 2010) is misplaced. In re Mercury is not binding on this Court, and it appears that no court outside the Ninth Circuit has ever followed its conclusion that Rule 23(h) requires a fee petition to be filed before the objection deadline. In Bailey v. AK Steel Corp., 2008 U.S. Dist. LEXIS 18838 (S.D. Ohio, February 28, 2008), the court found that

---

[1] Objector Neaman's counsel has raised essentially this same argument in other cases without success. See Dupler v. Costco Wholesale Corp., 705 F.Supp.2d 231, 248 (E.D.N.Y. 2010); Carlson v. Xerox Corp., 355 Fed. Appx. 523, 525 (2d Cir. 2009); In re Lawnmower Engine Horsepower Mktg. & Sales Practices Litig., 733 F.Supp.2d 997, 1013 n.12 (E.D. Wis. 2010).

counsel satisfied Rule 23(h)'s notice requirements by stating in the class notice the amount of fees they intended to ask the Court to approve. Further, even if In re Mercury were binding upon this Court (and it is not), any alleged error committed by filing the fee petition after the objection deadline would still be harmless because the objectors had a fair opportunity to prepare objections to the fee petition after it was filed and before the Fairness Hearing. Class Counsel's Motion for Attorney Fees, Expense Reimbursement, and Contribution Awards [Doc. 112] was filed on September 24, 2012, and posted on the Settlement Website shortly thereafter. The Objectors had over three weeks prior to the October 17, 2012 Fairness Hearing to prepare and file any opposition to Class Counsel's motion for attorneys' fees, expense reimbursement, and contribution awards. Thus, any error in the timing of filing the fee petition would have been harmless. See In re Lawnmower Engine Horsepower Mktg. & Sales Practices Litig., MDL No. 08-1999, 2010 U.S. Dist. LEXIS 121684, **19-21 (E.D. Wis. Oct. 28, 2010) (refusing to follow In re Mercury).

19. The Court overrules the objections raised by Shell[e]y Stevens, some of which overlap with the prior objections discussed above. Ms. Stevens first objects to the fact that the postcard notice refers class members to a website for information about the Settlement, claiming that class members who do not have computers will not be able to get information. Objector Stevens fails to note that the postcard notice also stated that a class member may "call 1-888-689-9302 for answers to frequently asked questions or to request a copy of the Long Notice." Further, there is no indication that Ms. Stevens does not have a computer, that her computer was "down," or that she was unable to call the toll free number. To the contrary, Ms. Stevens admits that she (or her counsel) reviewed the documents on the website. This objection is overruled.

Objector Stevens next objects that the Notice does not sufficiently outline the claims, issues, strengths, weaknesses and defenses of the case, and does not provide sufficient as to the reasonableness of the requested attorneys' fees.  However, "Class members are not expected to rely upon the notices as a complete source of settlement information." Brent v. Midland Funding, LLC, 2011 U.S. Dist. LEXIS 98763, *32-33 (N.D. Ohio Sept. 1, 2011), citing Grunin v. International House of Pancakes, 513 F.2d 114, 122 (8th Cir. 1975).  "Notice of a class settlement need only 'fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with [the] proceedings.'" Int'l Union, UAW v. Ford Motor Co., 2006 U.S. Dist. LEXIS 70471 (E.D. Mich. July 13, 2006), quoting Weinberger v. Kendrick, 698 F.2d 61,70 (2d Cir. 1982) (quotation and citation omitted).  "Class Notice 'can practicably contain only a limited amount of information,' and, therefore, may properly be limited to 'very general descriptions of the proposed settlement.'" Id.  Ms. Stevens had the opportunity to examine additional case documents through the case website, or by contacting Class Counsel.  There is nothing improper about the notice issued in this case, and Ms. Stevens' objections that it is not sufficiently detailed are overruled.

Objector Stevens also objects that the Notice and documents that appear on the website do not contain enough information for "a typical class member to determine whether or not this is a good or bad settlement."  However, some of the information Ms. Stevens claims is missing is in fact on the website, including the estimated size of the class ("the proposed class includes approximately 900,000 individuals who have filed claims within the class period"). See Order Approving Class Certification [Doc. 43 at p. 6], available at www.feglisettlement.com. Additionally, although not posted on the settlement website, Plaintiffs' Motion for Preliminary

Approval [Doc. 104] includes the amount of damages Plaintiffs would likely have sought to recover had the case been litigated to conclusion ($28,000,000), and Class Counsel's assessment of the case.  The Motion was available on the Court's online docket, or by contacting Class Counsel, which the settlement website invites Class Members to do.  This objection is overruled.

Objector Stevens goes on to object that "the class is not told what rate should have been paid or even what the new rate will be after adding the money received in the settlement." Class Counsel calculated prospective damages as potentially reaching $28,000,000 and the case was settled for $11,500,000.  Class Members were additionally provided an estimate of the benefits they would receive under the settlement on the website, in the long form notice, and through the toll fee telephone number.  Accordingly, the Court concludes that adequate information was provided to the Class to evaluate the Settlement and overrules this objection.

Objector Stevens' next objection, i.e., that Class Counsel should have filed their fee petition prior to the objection deadline, is duplicative of Objector Neaman's.  For the reasons discussed above, this objection is overruled.

Objector Stevens' final objection is that the Class has not yet been told "how many hours class counsel have spent on this case and what the hourly rate is that they will receive." However, Objector Stevens had access to Class Counsel's motion seeking attorneys' fees more than three weeks prior to the Fairness Hearing.  Class Counsel's motion is based upon a percentage of the common fund analysis, reiterates that they are seeking 20% of the $11,500,000 common fund, and discloses Class Counsel 's hourly rates as well as the number of hours they spent litigating this action.  This objection is overruled.

20.  Having reviewed Class Counsel's Motion and Memorandum For Approval of

Attorneys' Fees, Expense Reimbursement, and Contribution Awards [Doc. 112], as well as any and all objections thereto, and based upon all previous filings in this action, the Court concludes and orders as follows:

   a. The Settlement Agreement creates an $11,500,000 common fund for the benefit of the Class. Notably, Class Members need not submit a claim to receive their settlement payment. Rather, every Class Member who does not opt out of this Settlement will receive a settlement payment, with no reversion to Defendants.

   b. Rule 23(h) of the Federal Rules of Civil Procedure expressly authorizes a court to award "reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." Negotiated and agreed-upon attorneys fees as part of a class action settlement are encouraged as an "ideal" toward which parties should strive. Bailey v. AK Steel Corp., 2008 U.S. Dist. LEXIS 18838, *3 (S.D. Ohio, February 28, 2008).

   c. Where, as here, "counsel's efforts create a substantial common fund for the benefit of the class, they are, therefore, entitled to payment from the fund based on a percentage of that fund." Connectivity Sys. Inc. v. Nat'l City Bank, 2011 U.S. Dist. LEXIS 7829 (S.D. Ohio Jan. 25, 2011), citing Brotherton v. Cleveland, 141 F. Supp. 2d 894, 900 (S.D. Ohio 2001); Basile v. Merrill Lynch, Pierce, Fenner, & Smith, Inc., 640 F. Supp. 697 (S.D. Ohio 1986) (citing Boeing Co. v. Van Gernert, 444 U.S. 472, 478 (1980). And, "[i]n the Southern District of Ohio, the preferred method is to award a reasonable percentage of the fund, with

reference to the lodestar and the resulting multiplier." Connectivity Sys. Inc., 2011 U.S. Dist. LEXIS 7829, citing In re Telectronics Pacing Sys., Inc., 186 F.R.D. 459, 483 (S.D. Ohio 1999), rev 'd on other grounds, 221 F.3d 870 (6th Cir. 2000).

d.   The Sixth Circuit has adopted the following factors to consider when determining what constitutes a reasonable fee in a common fund case: (1) the value of the benefit rendered to the plaintiff class (i.e. the results achieved); (2) the value of the services on an hourly basis; (3) whether the services were undertaken on a contingent fee basis; (4) society's stake in rewarding attorneys who produce such benefits in order to maintain an incentive to others; (5) the complexity of the litigation; and (6) the professional skill and standing of counsel involved on both sides.

e.   Considering each of these factors and applying them to this action, the Court concludes and orders that a fee award equal to 20% of the common fund is reasonable in this action.

f.   The reasonableness of this fee is also supported by the lodestar cross-check that equates to the application of a 1.75 multiplier to Class Counsel's $1,314,488 lodestar as of September 21, 2012.

g.   The application of a 1.75 multiplier is within the range of multipliers applied to lodestar rates in the Southern and Northern Districts of Ohio.  See, e.g., Connectivity Sys. Inc., 2011 U.S. Dist. LEXIS 7829, *35-36 (approving a multiplier of 2.39 while noting that a "multiplier of between approximately 2.0

and 5.0 existed in the fee awards in this District"); In re Nationwide Fin. Servs. Litig., 2009 U.S. Dist. LEXIS 126962 (S.D. Ohio Aug. 18, 2009) (approving multiplier of 2.4); In re: Sulzer Hip Prosthesis & Knee Prosthesis Liab. Litig., 268 F.Supp. 2d 907, 938 (N.D. Ohio 2003) (effective multiplier is approximately 2.4); Revco Securities Litig., 1992 U.S. Dist. Lexis 7852 (N.D. Ohio 1992) (applying 2.5 multiplier).

h. Moreover, a 1.75 multiplier is within the range of what the Sixth Circuit considers to be reasonable. See Barnes v. City of Cincinnati, 401 F.3d 729, 746-747 (6th Cir. 2005) (upholding multiplier of 1.75); Rawlings v. Prudential-Bache Props., Inc., 9 F.3d 513, 517 (6th Cir. 1993) (approving 2.0 multiplier).

I. Accordingly, because "[i]n this Circuit, the lodestar figure is used to confirm the reasonableness of the percentage of the fund award," Connectivity Sys. Inc., 2011 U.S. Dist. LEXIS 7829, *35, citing Bowling v. Pfizer, 102 F.3d 777, 780 (6th Cir. 1996), Class Counsel's lodestar confirms the reasonableness of fee award representing 20% of the common fund.

j. Under the common fund doctrine, Class Counsel is also entitled to reimbursement of all reasonable out-of-pocket expenses and costs in the prosecution of claims, and in obtaining settlement, including but not limited to expenses incurred in connection with document productions, consulting with and deposing experts, travel and other litigation-related expenses. In re Cardizem CD Antitrust Litig., 218 F.R.D. 508, 534-535 (E.D. Mich. 2003). Having reviewed

Class Counsel's request for expenses and the various categories and charges contained therein, the Court concludes that these expenses are reasonable and were necessary for the prosecution of this action and hereby orders that Class Counsel shall be reimbursed $316,000.18 for these reasonable expenses and costs.

k.  The Settlement Agreement also provides that Class Counsel will apply to the Court for contribution awards for the two Class Representatives in an amount not to exceed $10,000. This District has previously approved contribution awards in this range. Bert v. AK Steel Corp., 2008 U.S. Dist. LEXIS 111711 (S.D. Ohio 2008) (this Court approved $10,000 incentive award to each class representative); Birr v. Amica Mut. Ins. Co., 2011 U.S. Dist. LEXIS 40665, *1 (S.D. Ohio April14, 2011) (adopting Magistrate Judge's Report and Recommendation approving incentive payment to the Class Representative of $5,000).  In this case, Debra Goettsche-Bower and Linda Cassady made valuable contributions and assisted Class Counsel in prosecuting and settling this litigation. At the inception of this action, these individuals indicated their desire and willingness to undertake the responsibilities and fiduciary duties on behalf of the class.   This is a voluntary obligation that goes well beyond the pursuit of their individual claims, and they diligently fulfilled their duties to the Class up to the present moment.  Each class representative remained in close contact with Class Counsel, prior to the case filing and throughout the litigation; each reviewed the complaints and court filings; each provided answers to interrogatories and document requests, each prepared for and gave deposition testimony, and each approved the Settlement

with Class Counsel.  Without their willingness to undertake these obligations on behalf of more than 900,000 class members, the recovery in this case would not have occurred.  Thus, the Court awards each Class Representative a contribution award of $5,000.

l.  The attorneys' fees and costs and Class Representative Contribution Awards authorized and approved by this Order shall constitute full and final satisfaction of any and all claims that Class Representatives, any Class member, and each of their respective attorneys, may have or assert for reimbursement of fees and costs or Class Representative awards; and Class Representatives, Class members and each of their respective attorneys shall not seek or demand payment of any additional fees and costs or payments to the Class Representatives.  The Releasees shall have no further responsibility for, and no liability whatsoever with respect to, any payment or disbursement of attorneys' fees and costs or payments to Class Representatives, nor with respect to any allocation of attorneys' fees and costs or payments to  Class Representatives to any other person who entity who may assert any claim thereto.

21.  Class Counsel and the Settlement Administrator shall comply with the provisions of Section 4.6 of the Settlement Agreement, which relates to un-cashed settlement payments.

22.  This Order adjudicates all of the claims, rights and liabilities of the Parties to the Settlement, and is intended to be final and immediately appealable.

IT IS SO ORDERED.

DATED: October 17, 2012                             s/Sandra S. Beckwith
                                                    Sandra S. Beckwith, Senior Judge

United States District Court